**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Crowson-Stone Printing Company, | ) | Case No.: 11-2768-dd |
| | ) | |
| Debtor. | ) | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING
BIDDING PROCEDURES AND BUYER PROTECTIONS
IN CONNECTION WITH THE SALE OF DEBTOR'S ASSETS**

Crowson-Stone Printing Company (hereinafter, the "Debtor") moves the Court for entry of an order approving bidding procedures in connection with the proposed sale of certain of the Debtor's assets and the assets of Crowson Stone Real Estate, LLC ("CSRE")[1] to Indexx, Inc. or its assigns ("Buyer"). Concurrent with the filing of this motion, the Debtor has filed a Motion for Order Authorizing Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests ("Sale Motion"). Any capitalized terms not defined herein shall have the same meaning ascribed to them in the Sale Motion.

In an effort to maximize the value of its estate for the benefit of creditors, the Debtor requires that the sale of the Debtor's Assets,[2] as defined in the Sale Motion, to the Buyer remain subject to higher or otherwise better offers. The Sale Motion identifies an overall purchase price of $1,275,000.00 with an allocation of $427,500 to the Debtor's Assets (subject to adjustments as set forth in the Asset Purchase Agreement). However, the Sale Motion also includes the waiver of a post-petition rent claim that is at a minimum $47,500.00 and at a maximum over $120,000.00. Debtor asserts, therefore, that the true "Purchase Price" to be used for bid comparison is at least $475,000.00.

In order to facilitate the sale of the Assets, the Debtor wishes to establish a procedure under which competing bidders may bid and may know the procedures which will govern the

---

[1] CSRE, a non-debtor entity, owns the land and building ("Building") where the Debtor operates. While CSRE is not in bankruptcy, CSRE and it secured creditor, RREF SNV Acquisitions, LLC ("RREF") have consented to the sale of the Building in the Bankruptcy Court pursuant to the terms set forth in the Real Estate Purchase Agreement. Buyer's purchase of the Assets is contingent upon its purchase of the Building, and vice versa.

[2] While the Asset Purchase Agreement and Real Estate Purchase Agreement require the sale of both the Building and the Assets, with any competitive bidder required to purchase both, competitive bidding shall relate solely to the Debtor's Assets. It should be noted, however, that the Buyer's bid anticipates the continued operation of the business and the retention of most, if not all, of Debtor's employees.

1

bidding process. Accordingly, the Debtor seeks entry of an order: (i) establishing certain bidding and other sale procedures for the solicitation of higher or otherwise better offers; and (ii) granting a maximum of $40,000 ("Expense Reimbursement") to compensate the Buyer in the event it is not the successful purchaser.

  A. <u>Bidding Procedures</u>

The Debtor requests entry of an order approving the following procedures ("Bidding Procedures") that will be utilized if the Debtor receives a competing bid for the Assets:

  1. Any bid from any person or entity other than Buyer to purchase the Assets and Building, in order to be a qualifying bid (a "Qualified Competing Bidder" and a "Qualified Competing Bid"), shall:

> (A) be in writing;
> (B) include terms that are substantially similar in all material respects to the Asset Purchase Agreement, <u>including the terms related to the purchase of the Building</u>;
> (C) identify the potential bidder and the officer(s) or authorized agent(s) who will appear on behalf of such potential purchaser;
> (D) provide evidence, satisfactory to the Debtor in its reasonable discretion, of the potential bidder's financial wherewithal to consummate the proposed transaction;
> (E) provide that such offer is not subject to any due diligence or financing contingency or further board or similar approval;
> (D) exceed the Purchase Price, as defined herein, of $475,000 by at least $50,000;
> (F) include a deposit of $25,000.00 in certified funds payable to the trust account of undersigned counsel for the Debtor; and
> (G) be received by Debtor's counsel within 5 business days of the sale hearing that will be scheduled by the Court.

  2. Upon receipt, Debtor shall promptly deliver copies of any competing bid to Buyer, each of its secured creditors, the Richland County Treasurer, S&L Financial Corp., and Wells Fargo Financial (collectively "Secured Creditors") and the U.S. Trustee.

  3. No bid shall be considered by Debtor or the Court unless it is a Qualified Competing Bid and no bidder shall be permitted to participate in the auction process unless it is a Qualified Competing Bidder. The Debtor, U.S. Trustee, and Secured Creditors reserve the right to object to any bid being deemed a "Qualified Competing Bid".

  4. Upon receipt of any Qualifying Competing Bid, Buyer shall have the unconditional right to submit an overbid by delivering to Debtor no later than the beginning of the sale hearing to be scheduled by the Court (the "Sale Hearing"), an executed copy of an amendment to the Asset Purchase Agreement in which the purchase price set forth therein exceeds the purchase price offered by the Qualified Competing Bidder by a minimum of $25,000. Any higher bid of Buyer shall be subject to Debtor's acceptance of a still higher and better bid submitted during the Sale Hearing, with competitive bidding to be in increments of

$25,000 ("Overbid Increments"), provided that the Debtor, in its reasonable discretion, and in consultation with its Secured Creditors, may adjust Overbid Increments without further order of the court.

   5. If the successful bidder is unable to close the sale within the time required for the closing by the Asset Purchase Agreement, the successful bidder shall forfeit its deposit made pursuant to Section 1(F) above, and Debtor shall close the sale of the Assets and Building to the "Back-Up Bidder" without the necessity of obtaining another order from this Court. Under the foregoing scenario. Throughout the course of the Sale Hearing, all Qualified Bidders shall be required to serve as the Back-Up Bidder at their last offered bid in the event that such Qualified Bid is selected as the Back-Up Bid.

   6. The deposit made by any Qualified Competing Bidder, who is not either the successful purchaser or the Back-Up Bidder shall be returned timely to such Qualified Competing Bidder. The deposit made by the Back-Up Bidder shall be returned timely after the closing of the sale of the Assets and Building to the winning bidder.

   7. The presentation of a Qualified Competing Bid to the Court for approval does not constitute the Debtor's acceptance of such bid. The Debtor will be deemed to have accepted the successful bid only when the Court has entered an order approving the sale and such sale has been consummated.

   8. The Debtor reserves the right to modify the Bidding Procedures, in consultation with the Secured Creditors and the U.S. Trustee, without the need for any further order of the Court.

   B. <u>Buyer Protections</u>

   In marketing assets, debtors often employ buyer protections in order to encourage the making of other purchase offers. These protections are "important tools to encourage bidding and to maximize the value of the debtor s assets." <u>In re Integrated Resources. Inc</u>, 147 B.R. 650, 659 (S.D.N.Y. 1992). Establishment of the bidding procedure will insure an orderly and fair mechanism for evaluating competing offers and will allow competing bidders an opportunity to increase their bid, thereby maximizing the value of the estate. <u>See</u> <u>In Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)</u>, 107 F.3d 558 (8th Cir. 1997)(stating that a bidding procedure avoids confusion and ensures that a sale is conducted according to the bidders' reasonable expectations); <u>In re Gould</u>, 977 F.2d 1038 (7th Cir. 1992)(holding that adoption of detailed bidding procedures was within the court's discretion).

   In the present case, the Buyer has and will expend a significant amount of time and costs, including but not limited to legal fees, in negotiating and finalizing the proposed sale. Regardless of whether Buyer is the winning bidder and closes the sale, these negotiations and efforts will have enhanced the estate and increased the return to creditors of the estate. In

**3**

recognition of that enhancement, the Asset Purchase Agreement provides that in the event Buyer is not the winning bidder it shall be entitled to the Expense Reimbursement. However, Buyer shall not be entitled to an Expense Reimbursement in the event that the failure to consummate the transactions contemplated by the Asset Purchase Agreement is a direct result of a breach of the agreement by Buyer and its failure to cure such breach after written notice thereof.

Approval of the Expense Reimbursement under the terms and conditions set forth above is a fair and equitable compensation to Buyer in the event that another Qualified Competing Bidder becomes the winning bidder and the sale to such other Qualified Competing Bidder closes. Courts have routinely approved reimbursement fees to proposed buyers who were not the winning bidders. In re Twenver, Inc., 149 B.R. 954, 957 (Bankr.D.Colo.1992); see also In re Integrated Resources, Inc., 135 B.R. 746, *aff'd* 147 B.R. 650, 662 (S.D.N.Y. 1992). This Court has likewise approved expense reimbursement to the initial buyer (the stalking horse buyer). See In re Geo W. Park Seed Co., Inc., Case No. 10-02431-jw (Bankr. D.S.C. July 27, 2010); In re Daufuskie Island Properties, LLC, Case No. 09-00389-jw (Bankr. D.S.C. Sept. 24, 2009); In re Georgetown Steel Company, LLC, Case No. 08-13156 (D.S.C. May 13, 2004).

WHEREFORE the Debtor requests entry of an order granting the relief requested herein and such other and further relief that the Court deems necessary.

RESPECTFULLY SUBMITTED on this the 15th day of November, 2011, at Columbia, South Carolina.

LAW OFFICE OF NANCY E. JOHNSON, LLC

By: /s/ Nancy E. Johnson
Nancy E. Johnson
Attorney for the Debtor
2201 Greene Street
Columbia, SC  29205
Tele:  (803) 343-3424
Fax:  (803) 656-0510
Email:  nej@njohnson-bankruptcy.com